# UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In Re: | Chapter 13 |
| Marvin Leon Jackson, | Case No. 17-61598-LRC |
| Debtor. | |
| Wells Fargo Bank, NA | |
| Movant, | Contested Matter |
| V. | |
| Marvin Leon Jackson, Debtor, and Susie Ann Jackson, Codebtor, and Melissa J. Davey, Chapter 13 Trustee, | |
| Respondents. | |

### NOTICE OF ASSIGNMENT OF HEARING

PLEASE TAKE NOTICE that Wells Fargo Bank, NA, has filed a Motion for Relief from Stay and related papers with the Court seeking an order granting relief from the automatic stay.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion for Relief from Stay in United States Bankruptcy Courthouse, Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, GA 30303, Courtroom 1204 at **1:15 P.M. on March 6, 2018**.  Your rights may be affected by the Court's ruling on these pleadings.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)  If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing.  You may file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so.  If you file a written response, you must attach a certificate stating when, how and on whom (including

addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.  The address for the Clerk's Office is:  U.S. Bankruptcy Court, Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Room 1340, Atlanta GA 30303.  You must also mail a copy of your response to the undersigned at the address stated below.

In the event a hearing cannot be held within thirty (30) days from the filing of said Motion, as required by 11 U.S.C. Section 362, Movant, by and through counsel, waives this requirement and agrees to the next earliest possible date, as evidenced by the signature below. If a final decision is not rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period.

The undersigned consents to the automatic stay remaining in effect with respect to Movant until the court orders otherwise.

Dated:   February 1, 2018

Shapiro Pendergast & Hasty, LLP

/s/ Elizabeth Childers

Elizabeth Childers
Georgia Bar No.  143546
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Phone: 770-220-2535
Fax: 770-220-2665
echilders@logs.com

**UNITED STATES BANKRUPTCY COURT**
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In Re: | Chapter 13 |
| Marvin Leon Jackson, | Case No. 17-61598-LRC |
| Debtor. | |

---

| | |
|---|---|
| Wells Fargo Bank, NA | |
| Movant, | Contested Matter |
| V. | |
| Marvin Leon Jackson, Debtor, and Susie Ann Jackson, Codebtor, and Melissa J. Davey, Chapter 13 Trustee, | |
| Respondents. | |

**MOTION FOR RELIEF FROM STAY**
**AND MOTION FOR RELIEF FROM CODEBTOR STAY**

COMES NOW Wells Fargo Bank, NA, its successors or assigns, ("Creditor"), by and through its undersigned counsel, and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362(d) and 1301 FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.

Marvin Leon Jackson (hereinafter "Debtor") filed this proceeding under Chapter 13 of the Bankruptcy Code on July 3, 2017, and remains in possession of the subject property under a plan of arrangement confirmed by this Court.

3.

Creditor is the holder or servicer of a loan secured by certain real property now or formerly known as 70 Bermuda Circle, Covington, GA 30016, in Newton County, GA.   Copies of the Security Deed, Assignment, and Note are attached as Exhibits "A" through "C", respectively.  The terms of the Debt Agreement were amended by the attached loan modification agreement entered into by and between Wells Fargo Bank, N.A. and the Debtor(s) dated September 11, 2012 (the "Loan Modification Agreement").  The Loan Modification Agreement is attached as Exhibit "D".

4.

Debtor(s) executed a promissory note secured by a mortgage or deed of trust.  The promissory note is either made payable to Creditor or has been duly indorsed.  Creditor, directly or through an agent, has possession of the promissory note.  Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

5.

 Creditor alleges that the Debtor is in default to Creditor under the terms of the loan documents, having failed to make certain post-petition mortgage payments that have come due. As of January 26, 2018, the post-petition deficiency is $2,550.75 and consists of the November 1, 2017 through January 1, 2018 payments at $1,275.35 each, less the suspense balance in the

amount of $1,275.30.  An additional payment will come due February 1, 2018 and on the 1st day of each month thereafter until the loan is paid in full.

6.

As of January 26, 2018, the current unpaid principal balance due under the loan document is $196,064.31.  According to the Debtor's Schedule A, the property is valued at $131,700.00.

7.

Based upon the foregoing facts, there is a lack of adequate protection in the subject property.  Creditor shows that good cause exists to grant relief from the automatic stay of 11 U.S.C. § 362 and the CoDebtor stay of 11 U.S.C. § 1301.

8.

Creditor requests that upon entry of an Order granting relief from the automatic stay of Section 362 and the CoDebtor stay of 11 U.S.C. § 1301 said Order also instruct the Chapter 13 Trustee to cease disbursements on Creditor's Proof of Claim.

WHEREFORE, Creditor respectfully requests:

a)  That the automatic stay under 11 U.S.C. § 362  and the CoDebtor stay of 11 U.S.C. § 1301 be modified to allow Creditor to pursue state remedies to protect its security interest in the Property, including, but not limited to, effectuating a foreclosure sale and gaining possession of the Property; to contact the Debtor and CoDebtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

b)  That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be waived;

c) That Creditor be permitted to offer and provide Debtor with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtor;

d) Creditor prays, that in the event of an Order granting relief from the automatic stay of Section 362 said Order also instruct the Chapter 13 Trustee to cease disbursements on Creditor's Proof of Claim.

e) For such other and further relief the Court deems just and proper.

Dated:    February 1, 2018

Shapiro Pendergast & Hasty, LLP

/s/ Elizabeth Childers

Elizabeth Childers
Georgia Bar No.  143546
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Phone: 770-220-2535
Fax: 770-220-2665
echilders@logs.com

## CERTIFICATE OF SERVICE

I certify that I am over the age of 18 and that on February 1, 2018_____, a copy of the

foregoing Notice of Assignment of Hearing was served, together with a copy of the Motion for

Relief from Stay by electronic mail or first class U.S. Mail, with adequate postage prepaid, on

the following persons or entities at the addresses stated below:

Marvin Leon Jackson
70 Bermuda Circle
Covington, GA 30016

Susie Ann Jackson
70 Bermuda Circle
Covington, GA 30016

Craig A Cooper
The Semrad Law Firm, LLC
Suite 201
303 Perimeter Center North
Atlanta, GA 30346

Melissa J. Davey
Melissa J. Davey, Standing Ch 13 Trustee
Suite 200
260 Peachtree Street, NW
Atlanta, GA 30303


Dated February 1, 2018_____              Shapiro Pendergast & Hasty, LLP


                                          __/s/ Elizabeth Childers_____
                                           Elizabeth Childers
                                          Georgia Bar No.  143546
                                          211 Perimeter Center Parkway, N.E.
                                          Suite 300
                                          Atlanta, GA 30346
                                          Phone: 770-220-2535
                                          Fax: 770-220-2665
                                           echilders@logs.com

DOC# 018541
FILED IN OFFICE
12/07/2007  04:15 PM
BK:2540  PG:543-555
LINDA D. HAYS
CLERK OF SUPERIOR COURT
NEWTON COUNTY

13

# INDEXED

After Recording Return To:
MID-ATLANTIC FINANCIAL SERVICES, INC.
200 GALLERIA PARKWAY, SUITE 1300
ATLANTA, GEORGIA 30339

**JON P. SPETALNICK**
ATTORNEY AT LAW
200 GALLERIA PARKWAY NW
SUITE 1350
ATLANTA, GA 30339
(770) 644-0010 FAX (770) 644-0011

GEORGIA INTANGIBLE
TAX PAID
$540.00
DATE 12/7/2007

_Linda R. Hays_
CLERK OF SUPERIOR COURT
NEWTON COUNTY

———————————— [Space Above This Line For Recording Data] ————————————

MIN: ▮▮▮▮▮▮▮    **SECURITY DEED**    FHA CASE NO.
▮▮▮▮▮▮▮

THIS SECURITY DEED ("Security Instrument") is given on    NOVEMBER 30, 2007
The grantor is    SUSIE ANN JACKSON AND MARVIN JACKSON AS JOINT
TENANTS WITH RIGHT OF SURVIVORSHIP

("Borrower"). The Security Instrument
is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter
defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
MID-ATLANTIC FINANCIAL SERVICES, INC., A GEORGIA CORPORATION
("Lender") is organized and existing
under the laws of    GEORGIA                                      , and
has an address of    200 GALLERIA PARKWAY, SUITE 1300, ATLANTA, GEORGIA
30339
Borrower owes Lender the principal sum of    ONE HUNDRED SEVENTY-NINE THOUSAND
FIVE HUNDRED EIGHTY AND 00/100          Dollars (U.S. $  179,580.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on    DECEMBER 1, 2037  .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants
and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and
convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns
of MERS with power of sale, the following described property located in
NEWTON    County, Georgia:

SAJ  _[signature]_

**EXHIBIT A**

BK:2540  PG:544

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE
A PART HEREOF AS EXHIBIT "A".
A.P.N.: ████████████

which has the address of   70 BERMUDA CIRCLE
                              [Street]

       COVINGTON              Georgia        30016       ("Property Address");
       [City]                 [State]        [Zip Code]

   TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors
and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter
erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All
replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in
this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the
interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as
nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests,
including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing or canceling this Security Instrument.
   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1.   Payment of Principal, Interest and Late Charge.  Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.
   2.   Monthly Payment of Taxes, Insurance, and Other Charges.  Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,
in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items
are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
   Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the
maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures
Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended
from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements
or disbursements before the Borrower's payments are available in the account may not be based on amounts due for
the mortgage insurance premium.

FHA GEORGIA SECURITY DEED - MERS
(6/96)                          Page 2 of 8            DocMagic **EForms** 800-649-1362
                                                      www.docmagic.com

SAJ

BK=2540   PG=545

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

FHA GEORGIA SECURITY DEED - MERS
(6/96)                          Page 3 of 8                  DocMagic *eForms* 800-649-1362
                                                            www.docmagic.com

S A J

BK=2540    PG=546

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.**  Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

(a)  **Default.**  Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)  **Sale Without Credit Approval.**  Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c)  **No Waiver.**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d)  **Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not

DocMagic €Forms 800-649-1362
www.docmagic.com

S A J

BK:2540   PG:547

paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60 DAYS
from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to
   60 DAYS                    from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply

S A J

BK=2540   PG=548

to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

FHA GEORGIA SECURITY DEED - MERS
(6/96)                                    Page 6 of 8                    DocMagic *eFarms* 800-649-1362
www.docmagic.com

S A J

BK:2540  PG:549

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act.  Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower.  Borrower shall pay any recordation costs.

**20. Waivers.**  Borrower waives all rights of homestead exemption in the property.

**21. Assumption not a Novation.**  Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.**  This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☒ Other [Specify}   ACKNOWLEDGMENT WAIVER RIDER | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)
SUSIE ANN JACKSON              -Borrower

_____ (Seal)
MARVIN  JACKSON              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

FHA GEORGIA SECURITY DEED - MERS
(6/96)

Page 7 of 8

DocMagic *eFarms* 800-649-1362
www.docmagic.com

BK: 2540   PG: 550

Signed, sealed and delivered in the presence of:

_Unofficial Witness_

Notary Public
State of Georgia

My commission expires: 4-17-10

(Seal)

VONDA WHITEHEAD BENTON
NOTARY PUBLIC
GWINNETT COUNTY, STATE OF GEORGIA
MY COMMISSION EXPIRES 4-17-10

FHA GEORGIA SECURITY DEED - MERS
(6/96)

Page 8 of 8

DocMagic *eForms* 800-649-1362
www.docmagic.com

S A J

BK=2540    PG=551

# Exhibit "A" Legal Description

**All that tract or parcel of land lying and being in Land Lot 166 of the 10th District, Newton County, Georgia, being Lot 7, Bermuda Run Subdivision, Unit One, as per plat recorded in Plat Book 30, Page 88, Newton County, Georgia records, which recorded plat is incorporated herein by this reference and made a part of this description.  Said property being known as 70 Bermuda Circle according to the present system of numbering property in Newton County, Georgia.**

**JPS File** ▮▮▮▮▮▮▮▮▮▮

SAJ

BK:2540    PG:552

Loan Number: ███████

# ACKNOWLEDGMENT AND WAIVER
# OF BORROWER'S RIGHTS RIDER

THIS ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER is made this 30th day of NOVEMBER, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to MID-ATLANTIC FINANCIAL SERVICES, INC., A GEORGIA CORPORATION (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

70 BERMUDA CIRCLE, COVINGTON, GEORGIA 30016

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to the following:

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THE SECURITY DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THE SECURITY DEED; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THE SECURITY DEED AND THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID SECURITY DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THE SECURITY DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

$SAJ$

BK:2540  PG:553

**READ AND AGREED BY GRANTOR:**

Signed, sealed and delivered
In the presence of:

_____
Unofficial Witness

_____ (Seal)
SUSIE ANN JACKSON    -Borrower

_____
Notary Public
VONDA WHITEHEAD BENTON
NOTARY PUBLIC
GWINNETT COUNTY, STATE OF GEORGIA
MY COMMISSION EXPIRES 4-17-10

_____ (Seal)
MARVIN JACKSON    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

BK:2540    PG:554

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Acknowledgment and Waiver of the Borrower's Rights" by the Borrower(s), I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgment and Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me this 3oth day of November 2007 .

_____  
Notary Public

_____  
Closing Attorney

VONDA WHITEHEAD BENTON  
NOTARY PUBLIC  
GWINNETT COUNTY, STATE OF GEORGIA  
MY COMMISSION EXPIRES 4-17-10

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
10/31/05                    Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

SAJ

BK:2540   PG:555

Loan Number: ██████████

# NOTICE PURSUANT TO O.C.G.A. SECTION 7-1-1014(3)

Lender: MID-ATLANTIC FINANCIAL SERVICES, INC.

Borrower(s): SUSIE ANN JACKSON, MARVIN JACKSON

Property Address: 70 BERMUDA CIRCLE, COVINGTON, GEORGIA 30016

**O.C.G.A. SECTION 7-1-1014(3) REQUIRES THAT WE INFORM YOU THAT IF YOU FAIL TO MEET ANY CONDITION OR TERM OF THE DOCUMENTS THAT YOU SIGN IN CONNECTION WITH OBTAINING A MORTGAGE LOAN YOU MAY LOSE THE PROPERTY THAT SERVES AS COLLATERAL FOR THE MORTGAGE LOAN THROUGH FORECLOSURE.**

**THIS NOTICE DOES NOT CONSTITUTE A CONTRACT OR A COMMITMENT TO LEND.**

I/We each acknowledge receipt of a copy of this Notice.

| | |
|---|---|
| Applicant SUSIE ANN JACKSON    11/30/07 Date | Applicant MARVIN JACKSON    11/30/07 Date |
| Applicant _____ Date | Applicant _____ Date |
| Applicant _____ Date | Applicant _____ Date |

DocMagic eServices 800-649-1362
www.docmagic.com

DOC#/005143
FILED IN OFFICE
06/22/2011   10:50 AM
BK:2917  PG:115-116
LINDA D. HAYS
CLERK OF SUPERIOR COURT
NEWTON COUNTY

Document drafted and prepared by:
Rhea Kilgore
When Recorded Return to:

Wells Fargo Home Mortgage
PO Box 1629, x9999-018
Minneapolis, MN  55440-9790

MERS Phone 1-888-679-6377

(Space above this line for county recorder use only)

### ASSIGNMENT OF SECURITY DEED

For value received, **Mortgage Electronic Registration Systems, Inc., (MERS) as nominee for MID-ATLANTIC FINANCIAL SERVICES, INC., A GEORGIA CORPORATION**, its successors and assigns, herein "Assignor", whose address is PO Box 2026, Flint, MI  48501-2026, the undersigned hereby grants, assigns, and transfers to:

**Wells Fargo Bank, NA**
1 Home Campus, Des Moines, IA 50328

herein "Assignee" its successors and/or assigns, all its right, title, and all beneficial interest under that certain Security Deed, herein "Security Instrument" executed by SUSIE ANN JACKSON AND MARVIN JACKSON AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, dated November 30, 2007, in the amount of $179,580.00 and given to Mortgage Electronic Registration Systems, Inc., (MERS) as nominee for MID-ATLANTIC FINANCIAL SERVICES, INC., A GEORGIA CORPORATION and recorded on December 7, 2007 as Document or Instrument Number 018541 and/or in Book 2540, Page 543-555, of Official Records in the County Recorder's office of Newton County, Georgia, describing land therein as:

Property Address:        70 Bermuda Circle, Covington, Georgia 30016
Parcel ID #:
Legal Description:        See Attached
Signed this 6/21/2011        .

Witness: Nancy D. Sorensen

Witness: Kathryn Churchill

Mortgage Electronic Registration Systems, Inc.

Deborah L. Humphrey, Secretary

Attested by: CATHERINE KOSA
Assistant Secretary

### GEORGIA ALL PURPOSE NOTARY ACKNOWLEDGEMENT

STATE OF MINNESOTA          }
COUNTY OF DAKOTA            }

On this 6/20/2011 before me, Amy H Galloway, personally appeared:
Deborah L. Humphrey, Secretary, Mortgage Electronic Registration Systems, Inc., and
CATHERINE KOSA, Assistant Secretary, Mortgage Electronic Registration Systems, Inc., ☐
personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary: Amy H Galloway
My Commission Expires: 1-31-15

AMY H. GALLOWAY
Notary Public-Minnesota
My Commission Expires Jan 31, 2015

SEAL AFFIXED

Page 1 of 2

**EXHIBIT B**

BK:2917    PG:116

Legal Description

**All that tract or parcel of land lying and being in Land Lot 166 of the 10th District, Newton County, Georgia, being Lot 7, Bermuda Run Subdivision, Unit One, as per plat recorded in Plat Book 30, Page 88, Newton County, Georgia records, which recorded plat is incorporated herein by this reference and made a part of this description. Said property being known as 70 Bermuda Circle according to the present system of numbering property in Newton County, Georgia.**

MIN: ███████████                    Loan Number: ███████████

# NOTE

FHA CASE NO.
████████████████

NOVEMBER 30, 2007
[Date]

        70 BERMUDA CIRCLE, COVINGTON, GEORGIA 30016
                    [Property Address]

**1.  PARTIES**
    "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
MID-ATLANTIC FINANCIAL SERVICES, INC., A GEORGIA CORPORATION

                                            and its successors and assigns.

**2.  BORROWER'S PROMISE TO PAY; INTEREST**
    In return for a loan received from Lender, Borrower promises to pay the principal sum of    ONE HUNDRED
SEVENTY-NINE THOUSAND FIVE HUNDRED EIGHTY AND 00/100                    Dollars
(U.S.$ 179,580.00            ), plus interest, to the order of Lender.  Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of    SEVEN AND 125/1000
                                        percent (        7.125 %) per year
until the full amount of principal has been paid.

**3.  PROMISE TO PAY SECURED**
    Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same
date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which might
result if Borrower defaults under this Note.

**4.  MANNER OF PAYMENT**
    **(A)  Time**
    Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning
on    JANUARY 1, 2008                        . Any principal and interest remaining on the first day of
DECEMBER 1, 2037                        , will be due on that date, which is called the "Maturity Date."

    **(B)  Place**
    Payment shall be made at   200 GALLERIA PARKWAY, SUITE 1300, ATLANTA, GEORGIA
30339

                        or at such other place as Lender may designate in writing by notice to Borrower.

    **(C)  Amount**
    Each monthly payment of principal and interest will be in the amount of U.S.$  1,209.86                    .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal,
interest and other items in the order described in the Security Instrument.

    **(D)  Allonge to this Note for Payment Adjustments**
    If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part
of this Note.  (Check applicable box.)

        ☐ Growing Equity Allonge              ☐ Graduated Payment Allonge

        ☐ Other [specify]

**5.  BORROWER'S RIGHT TO PREPAY**
    Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month.  Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid
for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower
makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender
agrees in writing to those changes.

**EXHIBIT C**                    SAJ    

**6. BORROWER'S FAILURE TO PAY**

    **(A)  Late Charge for Overdue Payments**

    If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                                                     percent (            4.000 %) of the overdue amount of each payment.

    **(B)  Default**

    If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.  In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.  This Note does not authorize acceleration when not permitted by HUD regulations.  As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    **(C)  Payment of Costs and Expenses**

    If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law.  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.  WAIVERS**

    Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require Lender to demand payment of amounts due.  "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.  GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

    Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  Lender may enforce its rights under this Note against each person individually or against all signatories together.  Any one person signing this Note may be required to pay all of the amounts owed under this Note.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

_____ (Seal)
SUSIE ANN JACKSON                -Borrower

_____ (Seal)
MARVIN JACKSON                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

PAY TO THE ORDER OF:  **Wells Fargo Bank NA**
WITHOUT RECOURSE

MID-ATLANTIC FINANCIAL SERVICES, INC., A GEORGIA CORPORATION

BY: _____

    **DENISE BIER**

ITS:

    **ASST. VICE PRESIDENT**

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

By _____
    Scott M. Swanson
    Assistant Vice President

**MULTISTATE-FHA  FIXED RATE NOTE (6/96)**
Document Systems, Inc. (800) 649-1362                    Page 2 of 2

**WELLS FARGO | HOME MORTGAGE**

Wells Fargo Home Mortgage
MAC W0151-053
210 Wildwood Parkway
Birmingham, AL 35209

Tel: 877 913 3376 Toll Free

                    LOAN MODIFICATION AGREEMENT
                    LOAN NUMBER: ████████████
                    PROPERTY ADDRESS 70 Bermuda Circle
                                     Covington GA 30016-7611

THIS LOAN MODIFICATION AGREEMENT ("Agreement"), made on
September 11, 2012, by and between Susie Ann Jackson
and Marvin Jackson
                              (the "Borrower(s)") and
Wells Fargo Bank, N. A.  (the "Lender",
together with the Borrower(s), the "Parties").

                    WITNESSETH
WHEREAS, Borrower has requested and Lender has agreed, subject to the
following terms and conditions, to a loan modification as follows:
NOW THEREFORE, in consideration of the covenants hereinafter set forth
and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged by the Parties, it is agreed
as follows (notwithstanding anything to the contrary in the Note and
Security Instrument dated 11/30/2007.)
1.   BALANCE. As of September 11, 2012, the amount payable under the Note
and Security Instrument (the "Unpaid Principal Balance") is U.S.
$ 188,006.16.
2.   EXTENSION. This Agreement hereby modifies the following terms of the
Note and Security Instrument described herein above as follows:
A. The current contractual due date has been extended from 05-01-11
to 11/01/2012. The first modified contractual due date is on
11/01/2012.
B. The maturity date has been extended from 07-40 (month/year) to
10/01/2042.
C. The amount of interest to be included (capitalized) will be U.S.
$ 14,100.48.
The amount of the Escrow Advance to be capitalized will be U.S. $6,952.83.
The amount of Recoverable Expenses* to be capitalized will be
U.S. $5,631.21.
The modified Unpaid Principal Balance is U.S. $ 214,690.68.
* Recoverable Expenses may include, but are not limited to: Title,
Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/
Property Inspections

D. The Borrower(s) promises to pay the Unpaid Principal Balance plus
interest, to the order of the Lender. Interest will be charged on the
Unpaid Principal Balance of U.S. $ 214,690.68. The Borrower(s) promises
to make monthly payments of principal and interest of U.S. $ 1,009.56,
at a yearly rate of 3.875%, not including any escrow deposit, if
applicable. If on the maturity date the Borrower(s) still owes an amount
under the Note and Security Instrument, as amended by this Agreement,
Borrower(s) will pay this amount in full on the maturity date.
LM521/B9P/1

Together we'll go far



Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

**EXHIBIT D**



Wells Fargo Home Mortgage
MAC W0151-053
210 Wildwood Parkway
Birmingham, AL 35209

Tel:  877 913 3376 Toll Free

E. Borrower agrees that certain amounts owed will not be capitalized, waived, or addressed as part of this Agreement, and will remain owed until paid. These amounts owed are referenced in the Cover Letter to this Agreement, which is incorporated herein, and are to be paid with the return of this executed Agreement. If these amounts owed are not paid with the return of this executed Agreement, then Lender may deem this Agreement void.

3.   NOTE AND SECURITY INSTRUMENT. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Note or Security Instrument. Further, except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement.
4.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Loan Modification Settlement Statement. Borrower(s) agree with the information disclosed in and understand that I/we am/are responsible for payment of any outstanding balances outlined in the Loan Modification Settlement.
5.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Borrower Acknowledgements, Agreements, and Disclosures Document (BAAD).
6.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Truth in Lending statement.
7. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.
8.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.
9. This Agreement is conditioned upon the receipt of the 1-4 Family Modification Agreement Rider Assignment of Rents, if included, specified in the attached cover letter, which is incorporated herein by reference.
10.   That (he/she/they) (is/are) the Borrower(s) on the above-referenced Mortgage Loan serviced by Wells Fargo Bank, N. A. .

That (he/she/they) have experienced a financial hardship or change in financial circumstances since the origination of (his/her/their) Mortgage Loan.

That (he/she/they) did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification.

LM521/B9P/2

Together we'll go far



Wells Fargo Home Mortgage
MAC W0151-053
210 Wildwood Parkway
Birmingham, AL 35209

Tel: 877 913 3376 Toll Free

CORRECTION AGREEMENT. The undersigned borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Bank, N. A. , as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. _____ (Borrower(s) initial)

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as the date first above written.

By signing this Agreement I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have. This includes text messages and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone. You will not be billed by your cellular or mobile carrier for any text messages you may receive from Wells Fargo, however, any calls we place to your cellular or mobile phone will incur normal airtime charges assessed by your mobile carrier.

Dated as of this __19__ day of __SEPTEMBER__, 20_12_.

_____          _____
Susie Ann Jackson                Marvin Jackson
Signature                        Signature

_____ 10-1-12
Wells Fargo Bank, N. A.

Name: _____**Kenya Blackmon**_____
            **Vice President Loan Documentation**
Its:_____
LM527/B9P/3

Together we'll go far



**Wells Fargo Home Mortgage**
MAC X7801-03K
3476 Stateview Boulevard
Fort Mill, SC 29715

LOAN MODIFICATION AGREEMENT
LOAN NUMBER: ▮
PROPERTY ADDRESS 70 Bermuda Circle
Covington GA 30016
MIN: ▮   MERS Phone: 1-888-679-6377

THIS LOAN MODIFICATION AGREEMENT ("Agreement"), made on
June 14, 2010, by and between Susie Ann Jackson and
Marvin Jackson and (the "Borrower(s)") and
Wells Fargo Bank, N A (the "Lender",
And Mortgage Electronic Registration Systems, Inc. (Mortgagee)
together with the Borrower(s), the "Parties").

WITNESSETH
WHEREAS, Borrower has requested and Lender has agreed, subject to the
following terms and conditions, to a loan modification as follows:
NOW THEREFORE, in consideration of the covenants hereinafter set forth
and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged by the Parties, it is agreed
as follows (notwithstanding anything to the contrary in the Note and
Security Instrument dated 11/30/2007.)
1. BALANCE. As of June 14, 2010, the amount payable under the Note
and Security Instrument (the "Unpaid Principal Balance") is U.S.
$ 176,373.26.
2. EXTENSION. This Agreement hereby modifies the following terms of the
Note and Security Instrument described herein above as follows:
A. The current contractual due date has been extended from 10-01-09
to 08/01/2010. The first modified contractual due date is on
08/01/2010.
B. The maturity date has been extended from 12-37 (month/year) to
07/01/2040.
C. The amount of interest to be included (capitalized) will be U.S.
$ 10,472.20.
The amount of the Escrow Advance to be capitalized will be U.S. $3,251.00.
The amount of Recoverable Expenses* to be capitalized will be
U.S. $0.00.
The modified Unpaid Principal Balance is U.S. $ 190,096.46.
* Recoverable Expenses may include, but are not limited to: Title,
Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/
Property Inspections

D. The Borrower(s) promises to pay the Unpaid Principal Balance plus
interest, to the order of the Lender. Interest will be charged on the
Unpaid Principal Balance of U.S. $ 190,096.46. The Borrower(s) promises
to make monthly payments of principal and interest of U.S. $ 1,020.48,
at a yearly rate of 5.000%, not including any escrow deposit, if
applicable. If on the maturity date the Borrower(s) still owes an amount
under the Note and Security Instrument, as amended by this Agreement,
Borrower(s) will pay this amount in full on the maturity date.
* (If applicable, all scheduled step rate changes according to your Note
and Security Instrument will remain unchanged.)   LM521/NJN/1



Wells Fargo Home Mortgage
MAC X7801-03K
3476 Stateview Boulevard
Fort Mill, SC 29715

3. NOTE AND SECURITY INSTRUMENT. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Note or Security Instrument. Further, except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement.

4. The undersigned Borrower(s) acknowledge receipt and acceptance of the Loan Modification Settlement Statement. Borrower(s) agree with the information disclosed in and understand that I/we am/are responsible for payment of any outstanding balances outlined in the Loan Modification Settlement.

5. The undersigned Borrower(s) acknowledge receipt and acceptance of the Borrower Acknowledgements, Agreements, and Disclosures Document (BAAD).

6. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Truth in Lending statement.

7. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Special Flood Hazard Area (SFHA).

8. That (he/she/they) (is/are) the Borrower(s) on the above-referenced Mortgage Loan serviced by Wells Fargo Bank, N A.

That (he/she/they) have experienced a financial hardship or change in financial circumstances since the origination of (his/her/their) Mortgage Loan.

That (he/she/they) did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification.

LM521/NIN/2



**Wells Fargo Home Mortgage**
MAC X7801-03K
3476 Stateview Boulevard
Fort Mill, SC 29715

CORRECTION AGREEMENT. The undersigned borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Bank, N A, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. _____ (Borrower(s) initial)

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as the date first above written.

By signing this Agreement I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have. This includes text messages and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone. You will not be billed by your cellular or mobile carrier for any text messages you may receive from Wells Fargo, however, any calls we place to your cellular or mobile phone will incur normal airtime charges assessed by your mobile carrier.

Dated as of this 14th day of JUNE, 20 10.

Susie Ann Jackson                    Marvin Jackson
Signature                            Signature

Wells Fargo Bank, N A                6.26.10

Mortgage Electronic Registration Systems, Inc.

Name: Terry Katzman
VP of Loan Documentation

Its: _____
LM527/NIN/3